**UNITED STATES of America,**
**Plaintiff,**

v.

**Tarik Ali BEY, Defendant.**

**Crim. No. 71–63.**

United States District Court,
W. D. Pennsylvania.

Dec. 6, 1974.

Richard L. Thornburgh, U. S. Atty., Pittsburgh, Pa., for plaintiff.

John Edward Wall, Herbert Bennett Conner, Dickie, McCamey & Chilcote, Pittsburgh, Pa., for defendant.

## OPINION

DUMBAULD, District Judge.

From the coinciding testimony of defendant and one of the investigating agents the following facts pertinent to this suppression hearing are established:

On or before November 6, 1967, the agent in charge received leads from the Denver office on what is called a Form 4119 indicating that in July, 1967, a gun, bearing serial number 218966 had been sold and shipped by Dave Cook, in Denver, to one Tarik Ali Bey in the Pittsburgh area.

On that date the two agents called at defendant's home, but he was not there, and arrangements were made through his wife for an interview on the following day.

On November 7, 1967, the agents interviewed defendant at his home. He was asked if he were Tarik Ali Bey, and answered affirmatively. He was asked if he had used the name Warren L. Williams,[1] and whether he had been convicted on a charge of larceny in 1963. He was also asked if he had bought a gun from Dave Cook in Denver. To these questions defendant answered affirmatively. Upon being asked about the gun he said it was upstairs and was loaded. He darted up and brought it down. Agent Prior, uneasy in the presence of a loaded gun, asked defendant to hand it to him, which was done. Prior unloaded it, and noted that it bore the number 218966.

Thereupon, and not before, agent Daverio pulled out a card containing the *Miranda* warnings and began to read them. Defendant said he could read English well, and took the card and read it, and stated that he understood his rights fully.

Defendant said that he did not know it was against the law to send away for a gun.

The agents retained the gun, giving defendant a receipt, and departed.

Defendant felt that by immolating and sacrificing the gun (like a deodand) he had purchased his peace with the powers that be and that nothing further would be heard of the matter. Agent Prior does not recall anything being said to the effect that defendant would not be prosecuted since he had no wrongful intent. In any event, defendant was later indicted.

On these facts, is defendant entitled to suppression?

Strictly speaking, the doctrine of Miranda v. Arizona, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966), is inapplicable here, since it applies only to "custodial interrogation," defined as questioning "after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." Defendant's counsel contend that the agent's interrogation of Tarik Ali Bey was "custodial", but this argument is not persuasive. There was no coercion or undue pressure. Defendant was behaving circumspectly and being prudently cooperative because he was apprehensive of being apprehended, but there was no custodial atmosphere. Indeed, at the end of the interview defendant believed that he was out of danger insofar as any brush with the law was concerned.[2]

But an earlier doctrine than that of Miranda condemns the investigatory conduct here. In Escobedo v. Illinois,

---

1. The name Williams was not used by defendant as an alias to disguise criminal activities, but was a legitimate family name, similar to that of the publicized Pittsburgh poet, pugilist, and pacifist Cassius Clay. Defendant used different names on various occasions,

*e. g.* when seeking employment, in order to avoid offending against community mores.

2. Like Agag he walked "delicately", but was wrong in thinking "Surely the bitterness . . . is past." 1 Sam. 16:32.

378 U.S. 478, 485, 492, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964), a distinction was drawn between general investigation of an unsolved crime, and specific inquiry focussed upon a particular suspect.

The government contends that not until the serial number of the gun was identified did the case against defendant crystallize into certainty and make him an "accused" party, as distinguished from general investigation of an unsolved crime. But this contention is unsound.

Before the warnings were given, the agents had extracted from the defendant's own mouth evidence completely establishing his guilt of the crime under scrutiny.

They had established his identity as Tarik Ali Bey, the person who had according to their information purchased a gun from Denver; his identity as Williams convicted of a crime; that he had ordered the gun from Denver and received it at an address in the Pittsburgh area; that the number of the gun so moving in interstate commerce was identical with that which defendant exhibited. What more was needed to establish a good case against defendant under the statute providing that "It shall be unlawful for any person . . . who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year . . . to receive any firearm . . . which has been shipped or transported in interstate . . . commerce"? [3]

The government argues that in no case can it be incriminating to ask a person his name. This seems dubious. "Are you John Wilkes Booth?" might well have been a dangerous question if a policeman had been there to ask it when the notorious assassin of President Lincoln stumbled into Dr. Mudd's office for treatment of his injured leg.

But let us concede *arguendo* that one's name is an externally observable characteristic (like height, weight, color of hair or eyes, timbre of voice, peculiarities of handwriting [4]) as distinguished from testimonial communication. See Schmerber v. California, 384 U.S. 757, 761, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966); California v. Byers, 402 U.S. 424, 431–432, 91 S.Ct. 1535, 29 L.Ed.2d 9 (1971); United States v. Dionisio, 410 U.S. 1, 5–7, 93 S.Ct. 764, 35 L.Ed. 2d 67 (1973).

Nevertheless other essential "links" in the chain of proof needed to demonstrate guilt [5] were obtained in violation of defendant's right not to give evidence against himself. The facts that he ordered a gun from Colorado, that he received it in Pennsylvania, and that its number was 218966, were surely not observable characteristics of defendant's life-style visible to passers-by and the general public. The existence of these essential ingredients of the government's case was established by means of testimonial communication emanating from the defendant in response to interrogation.

Substantial injury to defendant thus resulted from failure to give the appropriate warnings until after the evidence had been extracted. The violation of the *Escobedo* requirement for timely

3. 18 U.S.C. § 922(h). This is the section under which defendant was indicted on March 25, 1971. It carries forward provisions in force [former 15 U.S.C. 902(f)] at the time of defendant's alleged violation. Defendant had been first indicted on March 7, 1968, but that indictment was superseded and dismissed upon motion of the government.

4. That would be true if the law required everyone to wear a dog-tag with name and social security number visible at all times, as a draft registration certificate must be carried; or if it were the universal practice to wear name plates like those in some branches of the armed services, or some police departments in order to facilitate identification to establish charges of "police brutality" in civil rights cases.

5. See Chief Justice John Marshall's opinion in United States v. Burr, Fed.Cas.No.14692e; also Hoffman v. United States, 341 U.S. 479, 486, 488, 71 S.Ct. 814, 95 L.Ed. 1118 (1951).

protection of the rights of persons upon whom investigation has "focussed" as specific suspects was plainly injurious to defendant. The improperly obtained evidence must be suppressed.[6]

6. This is the second instance in which the writer of this opinion, during tenure of more than a dozen years on the bench of this Court, has ordered suppression of evidence. The other instance, where the return of a search warrant was not made as required by 41(d) F.R.Crim.P., was in United States v. Hall, Cr. 73–325, reversed November 14, 1974.